## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Case No. 1:24-cr-00320-RMR

UNITED STATES OF AMERICA,

      Plaintiff,

v.

**DEANNA CRYSTAL WEST,**
      a/k/a "Vital Sweetz," a/k/a "Sage West,"

      Defendant.

---

## PLEA AGREEMENT

---

The United States of America (the government), by and through Bryan Fields and Rebecca Weber, Assistant United States Attorneys for the District of Colorado, and the defendant, DEANNA WEST, personally and by counsel, Mary Butterton, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1. This agreement binds only the Criminal Division of the United States Attorney's Office for the District of Colorado and the defendant.

## I.   AGREEMENT

### A. Defendant's Agreement:

The defendant agrees to

(1)    plead guilty to Count One of the Indictment charging a conspiracy to use instrumentalities of interstate commerce to willfully make a threat and maliciously convey false information concerning an attempt to intimidate an individual by means of fire in violation of 18 U.S.C. § 371.

**COURT EXHIBIT 1**

(2)    waive certain appellate and collateral attack rights, as explained in detail below;

(3)    Pay any order of restitution imposed by the Court[1];

**B. Government's Obligations:**

This agreement is made pursuant to Fed.R.Crim.P.11(c)(1)(A) and (B). The government agrees to recommend a sentence at the low-end of the applicable guideline range for the criminal history and a total offense level calculated by the Court at sentencing. The government also agrees not to pursue an upward departure under U.S.S.G. § 2A6.1 app. note 4(A) or U.S.S.G. § 5K2.0 or an upward variance, based on information currently known to the United States Attorney's Office for the District of Colorado. Similarly, based on information currently known to the United States Attorney's Office for the District of Colorado, the government agrees not to bring other charges against the defendant concerning the events described in the Indictment and any efforts to obstruct an investigation into those events. The government agrees to move to dismiss Count 2 of the Indictment with prejudice, against this defendant only. Should the plea of guilty be vacated on the motion of the defendant, the government may, in its sole discretion, move to reinstate any or all of the counts dismissed pursuant to this agreement and potentially file a superseding indictment. The parties understand that this agreement is not binding on the Court.

Provided the defendant does not engage in prohibited conduct or otherwise implicate USSG §§ 3C1.1 and 3E1.1, cmt. n.4 between the guilty plea and sentencing

---

[1] Ms. West reserves the right to contest the amount of restitution to be imposed.

in this case, the government agrees that the defendant should receive a two level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a) and, should the Court calculate an offense level 16 or greater, agrees to file a motion requesting that the defendant receive a one level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(b).

If the defendant engages in conduct which implicates USSG § § 3C1.1 cmt. N.4 between the guilty plea and sentencing in this case, in addition to any other consequences, the government will be released from its obligations under the plea agreement, and the defendant will not thereby have any right to withdraw from the plea agreement.

### C. Defendant's Waiver of Appeal:

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence (including the restitution order), unless it meets one of the following criteria:

(1)    the sentence exceeds the maximum sentence provided in the statute of conviction;

(2)    the sentence exceeds the top end of the advisory guideline range from the Sentencing Guidelines that applies for the defendant's criminal history (as determined by the district court) at a total offense level of 8, provided the defendant does not engage in prohibited conduct or otherwise implicate USSG §§ 3C1.1 and 3E1.1, cmt. n.4 between the guilty plea and sentencing in this case, or 10 otherwise; or

(3)    the government appeals the sentence imposed.

If the first criterion applies, the defendant may appeal only the issue of how her sentence exceeds the statutory maximum sentence. But if one of the latter two criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence (including the restitution order) in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds:

(1)     the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute;

(2)     the defendant was deprived of the effective assistance of counsel; or

(3)     the defendant was prejudiced by prosecutorial misconduct.

The defendant also waives the right to appeal any sentence imposed below or within the Guideline range upon a revocation of supervised release in this case number, except where the defendant unsuccessfully objects to the grade of violation applied by the court during the district court revocation proceedings. In that event, this waiver does not apply and the defendant may appeal the sentence imposed upon a revocation of supervised release, even if that sentence falls below or within the guideline range calculated by the court.

The defendant also waives the right to appeal the denial of any motion filed under 18 U.S.C. § 3582(c)(1)(A) where such denial rests in any part upon the court's determination that a sentence reduction is not warranted under the factors set forth

in 18 U.S.C. § 3553(a). This waiver does not apply to an appeal of a denied § 3582(c)(1)(A)(i) motion where the district court, in denying the motion on § 3553(a) grounds, failed to consider the facts allegedly establishing extraordinary and compelling circumstances as part of its § 3553(a) analysis.

## II.    ELEMENTS OF THE OFFENSE(S)

The parties agree that the elements of conspiracy in violation of 18 U.S.C. § 371 are as follows:

1.    *First*, the defendant agreed with at least one other person to violate the law;

2.    *Second*, one of the conspirators engaged in an at least one overt act furthering the conspiracy's objective;

3.    *Third*, the defendant knew the essential objective of the conspiracy;

4.    *Fourth*, the defendant knowingly and voluntarily participated in the conspiracy;

5.    *Fifth*, there was interdependence among the members of the conspiracy; that is, members in some way or manner intended to act together for their shared mutual benefit within the scope of the conspiracy charged.

Tenth Circuit Pattern Jury Instruction No. 2.19 (2021 ed. updated July 14, 2023).

The parties further agree that the elements of the underlying crime of using instruments of interstate commerce to maliciously convey false information about an attempt to intimidate someone by means of fire in violation of 18 U.S.C. § 844(e) are as follows:

1.    The defendant conveyed information that was, in fact, false;

2.    When the defendant conveyed false information, she knew it was false;

3.    The defendant maliciously conveyed the information; and

    4.    The information conveyed concerned an alleged attempt to intimidate an individual by means of fire.

Eleventh Circuit Pattern Jury Instruction No. O27 (modified); *United States v. Williams*, 690 F.3d 1056 (8th Cir. 2012).

## III.   STATUTORY MAXIMUM SENTENCE

The maximum sentence for a violation of Count One of the Indictment is not more than 5 years' imprisonment; not more than 3 years' supervised release; not more than a fine of $250,000; $100 mandatory victim's fund assessment fee; and restitution in an amount to be determined at the time of sentencing.

## IV.   COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including, but not limited to, the rights to possess firearms, vote, hold elected office, and sit on a jury.

## V.   STIPULATION OF FACTS

The factual basis for this plea is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from presenting non-contradictory additional facts which are relevant to the Court's guideline

computation, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties stipulate that the following facts are true and correct:

On or about April 23, 2023, the defendant agreed with DERRICK BERNARD and ASHLEY BLACKCLOUD to commit an offense against the laws of the United States namely, a violation of 18 U.S.C. § 844(e), through the use of instrumentalities of interstate commerce — the internet and email — and in and affecting interstate commerce by willfully making a threat and maliciously conveying false information knowing the same to be false concerning an alleged attempt being made to intimidate an individual, CANDIDATE 1, whose identity is known to the parties, by means of fire in the form of a burning cross placed in front of a campaign sign for CANDIDATE 1 defaced with the word "nigger."

At the time of the offense the defendant was financially dependent on co-defendant DERRICK BERNARD, who was providing her with housing and employment. The defendant agreed to the conduct described in this stipulation of facts in order to curry favor with BERNARD. The parties stipulate and agree that the evidence in this case does not show, beyond a reasonable doubt, that the circumstances described in U.S.S.G. § 3A1.1 apply to this particular defendant.

As part of her participation in the conspiracy, the defendant drove to the intersection of E. Fillmore Street and N. Union Boulevard in Colorado Springs, Colorado with DERRICK BERNARD and ASHLEY BLACKCLOUD in the early morning hours of April 23, 2023. They all arrived at approximately 2:38 a.m. and

parked on Templeton Gap Road. From there, the defendant walked with BLACKCLOUD across several parking lots to the location of CANDIDATE 1's campaign sign. At approximately 3:21 a.m. BLACKCLOUD ignited a wooden cross in front of the campaign sign. The defendant took a photograph and a short video of the burning cross using her iPhone. The defendant knew that a burning cross was a hate symbol used to convey threats of violence against minority groups and intended it to be perceived that way.

The defendant, BERNARD, and BLACKCLOUD reviewed the photograph and video of the burning cross and agreed to send copies of it to local broadcast news organizations, non-profit groups and political figures for the purpose of falsely conveying information about an alleged attempt being made to intimidate CANDIDATE 1 from running for office because of his race and to interfere with CANDIDATE 2's election campaign. To carry out that agreement, the defendant used the internet to research how to write a letter complaining about acts of racism and for information about CANDIDATE 1's contact information. During her search, she found a document entitled "Hate in Elections" with the subtitle "How Racism and Bigotry Threaten Election Integrity in the United States." She then copy-and-pasted portions of that document to draft an email describing the nature of hate crimes in the context of elections while falsely claiming to have received news of the cross burning from an anonymous source, falsely claiming that the cross-burning was part of effort by unnamed parties using tactics to "keep [CANDIDATE 1]" out of the mayor's office, and falsely claiming that CANDIDATE 2's "following and members"

were "carrying out this nonsense" regarding the cross-burning.

On April 23, 2023 between approximately 8:40 p.m. and 9:02 p.m., the defendant and BLACKCLOUD drove to the parking lot of a large retail store in Colorado Springs, where she used the WiFi to create a sham Gmail account: Angiem11587@gmail.com. Working from a list of email addresses compiled by BLACKCLOUD, the defendant used that sham gmail account to distribute the email with false information about the cross-burning, along with a still photograph of the burning cross in front of CANDIDATE 1's campaign sign and a short video of the burning cross to new organizations, non-profits and political figures so that it would be conveyed throughout the community.

On the evening of April 24, 2023, several local news broadcasters aired segments related to the cross-burning. To further create the false impression that the cross-burning was a real effort by hate groups to intimidate CANDIDATE 1, the defendant worked with BLACKCLOUD and BERNARD to use social media platforms to further distribute the news accounts, falsely and fraudulently pretending as though the underlying events had been carried out by hate groups seeking to intimidate CANDIDATE 1 from running for office when, in fact, as she well knew, the cross burning had been carried out by herself, BLACKCLOUD and BERNARD to help generate sympathy and support for CANDIDATE 1.

The parties stipulate and agree that the conduct this particular defendant engaged in does not disqualify her from receiving the "zero point" offender decrease under U.S.S.G. § 4C1.1.

## VI.   ADVISORY GUIDELINE CALCULATION

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

The Guideline calculation below is the good-faith estimate of the parties, but it is only an estimate. Although the government is obligated to make the sentencing recommendation tied to an offense level of 8, as set forth in the Agreement section above, the parties understand that the government also has an independent obligation to assist the Court in making an accurate determination of the correct guideline range. To that end, the government may argue that facts identified in the presentence report, or otherwise identified during the sentencing process, affect the estimate below.

    a)    The parties agree that the applicable guideline is § 2A6.1. The base offense level is thus 12.

    b)    The parties agree no specific offense characteristics or role in the offense enhancements apply.

    c)    <u>Acceptance of Responsibility</u>.   The parties agree that the defendant should receive a 2-level adjustment for acceptance of responsibility. The resulting total offense level is 10.

**d)**    The parties further agree that the defendant is a "zero-point offender" as described in U.S.S.G. § 4C1.1, which results in a two level reduction in the offense level.  The resulting total offense level is 8.

e)    The parties understand that the defendant's criminal history computation is tentative and based on the defendant's prior convictions.  The parties believe the defendant is in criminal history category I.

f)    The career offender/criminal livelihood/armed career criminal adjustments do not apply.

g)    The advisory guideline range resulting from these calculations is **0-6** months.  However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level(s) estimated above could conceivably result in a range from 0 months (bottom of Category I) to 24 months (top of Category VI).  The guideline range would not exceed, in any case, the cumulative statutory maximums applicable to the counts of conviction.

h)    Pursuant to guideline § 5E1.2, assuming the estimated offense level above is correct, the fine range for this offense would be $2,000 to $ 20,000, plus applicable interest and penalties.

i)    Pursuant to guideline § 5D1.2, if the Court imposes a term of supervised release, that term would be at least one year, but not more than three years.

j)    Pursuant to guideline § 5E1.1, the defendant agrees to pay any restitution order by the Court.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or

position of any party on any 18 U.S.C. § 3553 factor.

## VII.    ENTIRE AGREEMENT

The agreement disclosed to the Court is the entire agreement. There are no other promises, agreements or "side agreements," terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any other terms, promises, conditions or assurances.

Date: 3|11|25

_____
DEANNA WEST
Defendant

Date: 3|11|25

_____
Mary Butterton
Attorney for Defendant

Date: 3/11/25

_____
Bryan Fields
Assistant U.S. Attorney

Date: 3/11/25

_____
Rebecca Weber
Assistant U.S. Attorney